# DECLARATION OF ALEX ALBRIGHT

Alex Albright hereby declares, pursuant to the provisions of 28 U.S.C. § 1746, as follows:

1. I am an employee at the Institute of Museum and Library Services ("IMLS"). As of March 31, 2025, I have been placed on administrative leave, and I have been informed that I along with most IMLS staff will be subject to a reduction in force and terminated on May 4, 2025. I am making this declaration under a pseudonym because I am concerned about reprisal against myself or those close to me by the federal government, its officials, or others. My identity is known to counsel for the American Library Association.

2. Through my experience at IMLS, I have knowledge about how IMLS grants are issued and how grant payments are processed. I was present at IMLS headquarters on March 28, 2025 when Acting Director Keith Sonderling and personnel from the "Department of Government Efficiency" ("DOGE") visited the agency to meet with the General Counsel and the Director of Human Resources. I was also present at IMLS headquarters on March 31, 2025 when DOGE personnel returned to inform the General Counsel and Director of Human Resources that IMLS staff were being placed on administrative leave effective immediately and that DOGE would be pursuing termination of most or all IMLS grants.

3. IMLS issues various grants pursuant to its statutory duties. Pursuant to statutory authorization, IMLS issues Notices of Funding Opportunities ("NOFOs") notifying the public of the availability of federal funds for particular

purposes. Prospective grantees apply for grants under the terms of the NOFO, and IMLS then awards the grants based on the applications submitted.

4. IMLS grant funds are not directly disbursed by IMLS. Grant funds are processed by a federal shared services provider that disburses IMLS's approved obligations and payments out of a U.S. Treasury account when IMLS directs it to do so.

5. Typically, a grantee will make a request for reimbursement or an advance of funds under an open grant they have been awarded. IMLS staff then review the request, identify any issues, work with the grantee to correct those issues, and then approve the request once any identified issues have been corrected.

6. IMLS staff typically compile approved requests for reimbursement or advances on a daily basis and then send them to the payment processor for disbursement. The processor, which is located in Oklahoma, then makes the payment out of a Treasury account where IMLS funds appropriated by Congress are kept. These payments are typically fully reviewed, processed and disbursed within ten days of the grantee's request.

7. Reimbursement requests received at the end of a fiscal quarter are held for a brief period while quarter-end activities are completed. These requests are typically processed promptly near the beginning of the following month.

8. On March 25, 2025, I learned that DOGE had contacted IMLS's payment processor and ordered them to stop processing all approved reimbursements and advances from IMLS, and not to process any new approved

payment orders issued by IMLS staff until further notice. Nate Cavanaugh, a DOGE employee currently assigned to the General Services Administration ("GSA") and detailed to IMLS upon Acting Director Sonderling's appointment, issued this directive to the payment provider from his GSA email address instructing them to hold IMLS's daily reimbursement payment orders, and not to process them. The pause on payment processing was indefinite.

9. IMLS staff were not informed of this freeze of payment processing by DOGE or agency officials. We were not consulted in advance of the freeze, and there was no communication about when funds might be released. I have learned from publicly available information that IMLS has released at least one payment to a Grants to States grantee on or around April 11, 2025. To my knowledge, no payment requests were paid between March 24, 2025 and April 11, 2025.

10. Due to the timing of IMLS's annual award cycles, many grant award periods end at the end of the summer. Because of this, reimbursement request volumes are typically high in the spring and summer as grantees complete their projects. On what would be a typical timeline, the next several months would entail millions to tens of millions of dollars of reimbursement requests per week. Those requests were not being disbursed at all between March 25, 2025 and March 31, 2025; the agency has since sent termination notices to many or most grantees with open awards under IMLS's discretionary museum and library programs, and to my knowledge has not disbursed the funds from payment requests that were approved by IMLS staff on or before March 31, 2025.

3

11. On Friday, March 28, 2025, Keith Sonderling came to the IMLS office along with personnel from DOGE, including Nate Cavanaugh. They asked to meet only with the General Counsel and Head of Human Resources of IMLS. In preparation for the meeting, IMLS staff prepared lists of the statutes that impose duties on IMLS and open grant awards, and provided that information to the meeting attendees.

12. I was not present at the meeting. My understanding is that the General Counsel and Head of Human Resources attempted to persuade Acting Director Sonderling and the DOGE personnel that IMLS was under a legal obligation to continue to disburse grant funds, but were unsuccessful. Sonderling and the DOGE personnel informed executive leadership that their goal would be to terminate all or most grants and that DOGE would return on Monday, March 31, 2025 to continue the discussion about terminating grants and also address personnel decisions.

13. On Monday, March 31, 2025, DOGE personnel including Nate Cavanaugh returned to IMLS around 11:30am and met again with the General Counsel and Head of Human Resources for about one hour. After this meeting, executive leadership convened briefly, and then walked through the office to gather staff and inform them that they were being placed on administrative leave as of that afternoon and that DOGE would be pursuing approval for an expedited 30-day reduction in force process. Staff were told that DOGE wanted them to vacate the premises as soon as possible. Staff were directed to leave all government equipment

and office access badges. Staff email accounts and access to all agency systems were disabled shortly thereafter.

14. Before March 2025, IMLS rarely terminated grants. In my time at IMLS, I am aware of very few grant terminations that occurred, in highly unusual situations. These terminations were processed only after careful consideration and best efforts to mitigate the underlying issues.

15. In my experience, when IMLS changes its program goals, those changes apply prospectively; in other words, future NOFOs incorporate the revised program goals, but active grants issued pursuant to the previous program goals are not affected by the change. Once established for a given NOFO, the program and agency goals listed in the announcement to which prospective grantees apply remain the goals as established for that grant award. Any change would only affect a future NOFO and future grant applications. I have never seen program goals changed in a way that resulted in the termination of previously awarded grants. As far as I am aware, there have been no updates to any of the program goals for any of the grant programs IMLS currently administers.

16. It is my understanding that all but 12 IMLS staff are currently on administrative leave. Of those 12, only 11 are currently working because one has been on personal leave. There are currently only four program-related personnel on staff: an acting deputy library director who was previously employed as a program specialist (whereas normally the deputy library director appointee would have many years of senior management experience in libraries); a senior library program officer

who previously served as associate deputy director for the Grants to States library program; an acting museum deputy director with no prior federal government experience who joined IMLS within the last year as associate deputy museum director, and a senior museum program officer.

17. It is my expectation that the staff currently working at IMLS are too few to award grants, issue grant funds within expected timeframes, or terminate grants in compliance with the law. All staff responsible for processing grant payment requests were placed on administrative leave. None of the remaining active employees has experience with the procedures or details of reviewing, correcting, and approving requests. The only remaining individual with system access to process payments has, to my knowledge, infrequently if ever accessed that system.

18. Even if one or two people understood the process for terminating and closing grants, that would be too few people to comply with IMLS's obligations under law and regulations.

19. The terms and conditions of every IMLS grant include a requirement that IMLS notify the grant recipient that they are entitled to request that IMLS review the termination. To my knowledge, many of the termination letters received by grantees to date have not included such notice; but on Tuesday, April 15, 2025, IMLS issued a blanket notice to grantees that had received termination notices that they may request review of such terminations. Some IMLS grantees have publicly reported that they received this notice without previously having received a termination letter or any other notification of grant termination.

20.     To request review of a grant termination, the grantee must submit a request for review in writing within thirty days of the date of the termination notice. The grantee must state their position and the facts supporting it. The burden then shifts to the agency to demonstrate that the termination was proper. The Director of IMLS must appoint a review committee consisting of three staff members who cannot be from the IMLS program or administrative staff that recommended termination, or that were responsible for programmatic or administrative aspects of the award. The committee must fully document all of its review activities and make a recommendation in writing to the Director regarding whether the termination should be upheld.

21.     Of IMLS's currently active staff, three to four are lawyers, four are program staff currently involved in monitoring and administrative aspects of the award programs being terminated, one is the chief financial officer currently involved in monitoring financial aspects of all awards, one is a communications director, and one to two are human resources personnel. Even if there were three of the remaining communications and human resources staff who could plausibly claim they were not involved in the terminations and be assigned to a review committee for each of many hundreds of terminated grants, it is highly likely that they would lack any context or experience with the task of reviewing grant terminations for propriety, and highly unlikely that those three staff would have capacity to perform complete reviews of this extremely unusual volume of terminated grants.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 16, 2025.

*/s/ Alex Albright*
Alex Albright