**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| American Library Association, et al., | |
| *Plaintiffs*, | |
| v. | Case No. 1:25-cv-01050 |
| Keith Sonderling, et al., | |
| *Defendants*. | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

ADDITIONAL FACTUAL BACKGROUND ........................................................................... 2

ARGUMENT ........................................................................................................................... 2

    I.     This Case Is Justiciable. .............................................................................................. 2

         A.    Plaintiffs Have Both Associational and Organizational Standing. ......................... 2

         B.    The Case Is Ripe for Judicial Determination. ......................................................... 5

         C.    The Tucker Act Does Not Deprive This Court of Jurisdiction. .............................. 7

         D.    The Civil Service Reform Act Does Not Channel Plaintiffs' Claims to an
             Administrative Body. ............................................................................................. 10

    II.    Defendants' Actions Irreparably Harm Plaintiffs. ..................................................... 12

    III.   Plaintiffs Have Shown a Likelihood of Success on the Merits.................................. 15

         A.    Defendants' Objections to Plaintiffs' APA Claims Lack Merit. .......................... 15

             1. The decision to dismantle IMLS is a discrete and final agency action..........15

             2. No law gives Defendants discretion to dismantle IMLS………………...…17

             3. Dismantling IMLS is arbitrary and capricious………………...……………18

             4. Dismantling IMLS is contrary to law……………………………………………19

          B.    Defendants' Dismantling of IMLS Is Unconstitutional. ...................................... 21

              1. Defendants have violated the separation of powers…………………………21

             2. Defendants have violated the Take Care Clause………………………………22

          C.    In the Event Plaintiffs' Other Claims Are Not Yet Ripe, This Court May Order
             Relief Under an Ultra Vires Theory...................................................................... 23

    IV.   The Balance of the Equities and the Public Interest Support a Preliminary Injunction
        Pausing the Dismantling of IMLS. ............................................................................ 24

    V.    There Is No Basis for Requiring Posting of a Bond. ................................................. 25

CONCLUSION...................................................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586
    (D.C. Cir. 2022) ............................................................................................................ 2, 3

*Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. 1:25-cv-00400, 2025 WL 752378
    (D.D.C. Mar. 10, 2025), *appeal filed*, No. 25-5098 (D.C. Cir. Apr. 2, 2025) ............... 1, 18, 20

*Am. Acad. of Pediatrics v. FDA.*, 379 F. Supp. 3d 461 (D. Md. 2019) ......................... 5

*Am. Fed'n of Gov't Emps. v. OPM*, No. 3:25-cv-01780, 2025 WL 900057
    (N.D. Cal. Mar. 24, 2025) ....................................................................................... 12

*Am. Sch. Of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902) ............................ 23

*Axon Enter. v. FTC*, 598 U.S. 175 (2023).................................................................. 11

*Bennett v. Spear,* 520 U.S. 154 (1997) ...................................................................... 16

*Bowen v. Massachusetts*, 487 U.S. 879 (1988)........................................................... 8

*C.G.B. v. Wolf*, 464 F. Supp. 3d 174 (D.D.C. 2020)................................................... 24

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ............................................................. 3

*Chi. Women in Trades v. Trump*, No. 1:25-cv-02005, 2025 WL 1114466
    (N.D. Ill. Apr. 14, 2025) ........................................................................................ 7

*Ciba-Geigy Corp. v. EPA*, 801 F.2d 430 (D.C. Cir. 1986)........................................... 16

*Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*, No. 1:25-cv-00511,
    2025 WL 752367 (D.D.C. Mar. 10, 2025).................................................................. 24

*City of New Haven, Conn. v. United States*, 809 F.2d 900 (D.C. Cir. 1987).................. 20

*Climate United Fund v. Citibank, N.A.*, No. 1:25-cv-00698, 2025 WL 1131412
    (D.D.C. Apr. 16, 2025) ...................................................................................... 7, 8, 9

*Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099 (D.C. Cir. 2022) ............................ 7

*Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) ......................... 4

*Dep't of Com. v. New York*, 588 U.S. 752 (2019)...................................................... 17

*Doctors for Am. v. OPM*, No. 1:25-cv-00322, 2025 WL 452707 (D.D.C. Feb. 11, 2025) .......... 13

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ........................................................... 4, 5

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015) ........................................ 2

*Gulf v. Burgum*, No. 1:23-cv-00604, 2025 WL 928684 (D.D.C. Mar. 27, 2025) ........................ 5

*In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013) ............................................................... 18, 22

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545 (D.C. Cir. 1999) ....................... 21

*Jones v. District of Columbia*, 177 F. Supp. 3d 542 (D.D.C. 2016) .......................................... 14

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ................................... 24

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ......................................................................................... 18

*Mach Mining, LLC v. EEOC*, 575 U.S. 480 (2015) .................................................................... 17

*Maine v. USDA*, No. 1:25-CV-00131, 2025 WL 1088946 (D. Me. Apr. 11, 2025) ..................... 7

*Marin Audubon Soc'y v. Fed. Aviation Admin.*, 121 F.4th 902 (D.C. Cir. 2024) ....................... 23

*Marszalek v. Kelly*, No. 1:20-cv-04270, 2021 WL 2350913 (N.D. Ill. June 9, 2021) .................. 3

*Massachusetts v. NIH*, No. 25-cv-10338, 2025 WL 702163 (D. Mass. Mar. 5, 2025) ............... 24

*Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982) ............................................................ 8

*Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167 (D.D.C. 1971) .................................. 25

*Nat'l Council of Nonprofits v. OMB*, No. 1:25-cv-00239, 2025 WL 368852
     (D.D.C. Feb. 3, 2025) ........................................................................................................... 21

*Nat'l Council of Nonprofits v. OMB*, No. 1:25-cv-00239, 2025 WL 597959
     (D.D.C. Feb. 25, 2025) ..................................................................................................... 2, 25

*Nat'l Fed'n of Indep. Bus. v. OSHA*, 595 U.S. 109 (2022) ......................................................... 23

*Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423 (D.C. Cir. 1996) .......................... 6

*Nat'l Treasury Emps. Union v. Vought*, No. 1:25-cv-00381, 2025 WL 942772
     (D.D.C. Mar. 28, 2025) ................................................................. 2, 15, 16, 17, 23, 24, 25

*New York v. Trump*, No. 1:25-CV-00039, 2025 WL 1098966 (D.R.I. Apr. 14, 2025) ........... 7, 14

*New York v. Trump*, No. 1:25-cv-00039, 2025 WL 715621 (D.R.I. Mar. 6, 2025),
   *stay pending appeal denied*, 2025 WL 914788 (1st Cir. Mar. 26, 2025) ................ 2, 19, 20, 22

*New York v. Trump*, No. 1:25-cv-01144, 2025 WL 573771 (S.D.N.Y. Feb. 21, 2025) .............. 23

*Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148 (D.D.C. 2017) ................................ 24

*OPM v. Am. Fed'n of Gov't Emps.*, No. 24A904, 2025 WL 1035208
   (U.S. Sup. Ct. April. 8, 2025) ................................................ 12

*PETA v. USDA*, 797 F.3d 1087 (D.C. Cir. 2015) ...................................... 5

*S.F. Unified Sch. Dist. v. AmeriCorps*, No. 3:25-cv-02425, 2025 WL 1180729
   (N.D. Cal. Apr. 23, 2025) ................................................. 7, 18

*Thunder Basin Coal Co. v. Reich*, 510 U.S 200 (1994).............................. 10, 11

*TikTok Inc. v. Trump*, 490 F. Supp. 3d 73 (D.D.C. 2020) ........................... 25

*Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598 (D.C. Cir. 1992),
   *overruled in part on other grounds*, *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591
   (D.C. Cir. 2017) ......................................................... 7

*Trump v. New York*, 592 U.S. 125 (2020)........................................ 6, 7

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, No. 1:25-cv-00465, 2025 WL 763738
   (D.D.C. Mar. 11, 2025)................................................... 9

*U.S. Dep't of Educ. v. California*, 145 S. Ct. 966 (2025) .......................... 9

*U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339 (D.C. Cir. 2012) ........... 21

*United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194 (2003) ....................... 24

*United States v. Fausto*, 484 U.S. 439 (1988) .................................. 10

*Widakuswara v. Lake*, 2025 WL 945869 (S.D.N.Y. Mar. 28, 2025) .............. 17, 18, 23

*Widakuswara v. Lake*, No. 1:25-cv-01015, 2025 WL 1166400
   (D.D.C. Apr. 22, 2025) ................................... 1, 7, 9, 16, 17, 23, 25

*Wis. Gas. Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669 (D.C. Cir. 1985) .......... 13

*Woonasquatucket River Watershed Council v. USDA*, No. 1:25-cv-00097,
   2025 WL 1116157 (D.R.I. Apr. 15, 2025)................... 1, 7, 14, 16, 19, 25

## Statutes

2 U.S.C. § 684 ................................................................................................ 20

20 U.S.C. § 9105a ........................................................................................... 20

20 U.S.C. § 9121 ............................................................................................. 24

20 U.S.C. § 9131 ............................................................................................. 19

28 U.S.C. §1491 ............................................................................................... 7

44 U.S.C. § 3501 ............................................................................................. 21

44 U.S.C. § 3507 ............................................................................................. 20

5 U.S.C. § 706 ................................................................................................. 18

5 U.S.C. § 7105 ............................................................................................... 11

5 U.S.C. § 7701 ............................................................................................... 11

Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4, 139 Stat. 9
    (Mar. 15, 2025) ........................................................................................... 19

Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, 138 Stat. 460
    (Mar. 23, 2024) ........................................................................................... 19

## Other Authorities

Exec. Order No. 14238, 90 Fed. Reg. 13043 (Mar. 14, 2025) ...................... 16

IMLS, *Special Note: General Terms and Conditions for IMLS Discretionary Grant
    and Cooperative Agreement Awards With Award Dates after December 21, 2020*,
    at 20–21, https://perma.cc/2J4M-XY7K ..................................................... 22

Reconsideration/Stay Order, *Sustainability Inst. v. Trump*, No. 2:25-cv-02152
    (D.S.C. April 9, 2025), ECF No. 52 ............................................................. 7

## Regulations

2 C.F.R. § 200.211 (2024) ............................................................................. 19

2 C.F.R. § 200.340 (2024) ............................................................................. 19

**Constitutional Provisions**

U.S. Const. art. I, § 1.................................................................................................................. 21

## INTRODUCTION

A preliminary injunction is vital to prevent the irreparable harm that Plaintiffs—libraries, librarians and their union, and members of the public who rely on them—have already suffered, and will certainly continue to suffer, as demonstrated in the record. Defendants have ignored this evidence—that almost the whole IMLS staff is gone, that virtually all competitive grants are being terminated, that there is no one left to provide advice and training to librarians, that services on which Plaintiffs rely have already been cut, that vital data collection and record-keeping has been stopped, and that the President has declared IMLS is "unnecessary" and must be "eliminated." And they have not proffered even a fragment of proof to the contrary, despite being the ones in control of the agency.

Instead, Defendants here repeat arguments the Administration has made in case after case to support its chain-saw approach to federal agencies chartered and funded by Congress of which it does not approve. Once again the government asserts that constitutional and APA claims are speculative and unripe because the agency's complete demise has not yet been fully accomplished. Once again it claims that plaintiffs suffering real harms have no standing, that constitutional claims should be read as contract disputes and dispatched to the Court of Federal Claims, that the separation of powers and the Take Care Clause are meaningless, that the APA can be ignored, and that any harm is speculative and easily remediable by a damages remedy years from now. And Defendants once again ignore that, in case after case, the well-reasoned opinions of courts in this District and elsewhere have shot down these arguments.[1]

---

[1] *See, e.g.*, *Widakuswara v. Lake ("Widakuswara II")*, No. 1:25-cv-01015, 2025 WL 1166400 (D.D.C. Apr. 22, 2025); *Woonasquatucket River Watershed Council v. USDA ("WRWC")*, No. 1:25-cv-00097, 2025 WL 1116157 (D.R.I. Apr. 15, 2025); *Aids Vaccine Advoc. Coal. v. U.S. Dep't of State ("AVAC")*, No. 1:25-cv-00400, 2025 WL 752378 (D.D.C. Mar. 10, 2025), *appeal filed*,

## ADDITIONAL FACTUAL BACKGROUND

Recent events confirm that Defendants are continuing, at a reckless pace, to shutter IMLS. At this point, they have apparently terminated the vast majority of competitive IMLS grants, Supp. Albright Decl. ¶ 3, including three more of ALA's, resulting in harm to ALA and the beneficiaries of the grant-funded programs ALA is now required to prematurely close, Supp. Inouye Decl. ¶¶ 8–12. Reimbursement requests are past due. Supp. Albright Decl. ¶ 6. Required reporting by IMLS reflects that most of its recent transactions appear to have occurred prior to the date staff were placed on administrative leave. *Id.* ¶ 8. The evolving record continues to reflect an agency dismantling itself at full speed.

## ARGUMENT

### I.  This Case Is Justiciable.

#### A.  Plaintiffs Have Both Associational and Organizational Standing.

"[A] party who seeks a preliminary injunction 'must show a substantial likelihood of standing.'" *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Both ALA and AFSCME make this showing via both associational and organizational standing.

Associational standing. To show associational standing, an organization must show that "(a) at least one of its members would otherwise have standing to sue in [the member's] own right; (b) the interest [the association] seeks to protect is germane to its purpose; and (c) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit." *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin. ("AHAS")*, 41 F.4th 586, 592 (D.C.

---

No. 25-5098 (D.C. Cir. Apr. 2, 2025); *Nat'l Treasury Emps. Union v. Vought ("NTEU")*, No. 1:25-cv-00381, 2025 WL 942772 (D.D.C. Mar. 28, 2025); *New York v. Trump*, No. 1:25-cv-00039, 2025 WL 715621 (D.R.I. Mar. 6, 2025), *stay pending appeal denied*, 2025 WL 914788 (1st Cir. Mar. 26, 2025); *Nat'l Council of Nonprofits v. OMB ("NCN II")*, No. 1:25-cv-00239, 2025 WL 597959 (D.D.C. Feb. 25, 2025).

Cir. 2022) (cleaned up). Defendants mistakenly state that Plaintiffs do not assert associational standing. Defs. Opp'n to Pls.' Mot. for a Prelim. Inj. ("Opp'n") at 13 n.3, ECF No. 21. This ignores Plaintiffs' extensive allegations that Defendants' actions harm "ALA and AFSCME *as well as their members*." Compl. ¶ 60, ECF No. 1 (emphasis added); *see also* Pls.' Mem. ISO Prelim. Inj. ("Pls.' Br.") at 29–35, ECF No. 13-1. Plaintiffs' declarations are replete with evidence that specific ALA and AFSCME members will be—or already have been—harmed by Defendants' actions. *E.g.*, Adams Decl. ¶¶ 6–8, ECF No. 13-8; Francis Decl. ¶¶ 27–29, ECF No. 13-18; Gaber Decl. ¶¶ 24, 29–30, ECF No. 13-19; Newman Decl. ¶ 9, ECF No. 13-15; Billinger Decl. ¶¶ 7–8, ECF No. 13-17; Supp. Bradley Decl. ¶¶ 5–6.

ALA's and AFSCME's members plainly have "standing to sue in [their] own right," meeting the first prong of associational standing. *AHAS*, 41 F.4th at 592 (quotation omitted). Indeed, Defendants do not seem to dispute that Plaintiffs sufficiently identify injuries to their members. *See* Opp'n at 13 (acknowledging that AFSCME "appears to assert an injury on its member's [sic] behalf"). Defendants instead argue that Plaintiffs cannot establish third-party standing, but the point is simply irrelevant: "third-party standing is a legally distinct concept from associational standing, where the organization represents the interests of its members." *See, e.g.*, *Marszalek v. Kelly*, No. 1:20-cv-04270, 2021 WL 2350913, at *5 (N.D. Ill. June 9, 2021).[2]

Defendants do not deny that the interests ALA and AFSCME seek to protect in this case are "germane to [their] purpose," *AHAS*, 41 F.4th at 594, leaving the second prong undisputed.

---

[2] Because Plaintiffs do not assert third-party standing, Defendants' argument that they cannot obtain the relief they seek for that reason, Opp'n at 9–10, is meritless. Plaintiffs have been harmed by Defendants' actions to dismantle IMLS, and they bring constitutional and statutory claims against that dismantlement. An injunction against dismantling IMLS would thus be an appropriate remedy and would provide "complete relief" to Plaintiffs. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Nor is it relevant that this relief would likely benefit other parties. There is no requirement that plaintiffs consist of every party injured by defendants' actions.

Nor could they. ALA seeks to "promote library services and librarianship," Compl. ¶ 1, an interest directly and adversely affected by the dissolution of IMLS's support of libraries. *See Am. Library Ass'n, Inc. v. United States*, 201 F. Supp. 2d at 414 (E.D. Pa. 2002). And AFSCME is a national labor organization that "represents tens of thousands of employees in public and private libraries," Compl. ¶ 2; a union's entire province is representing, providing services for, and bargaining on behalf of its members, and AFSCME stands in its members' shoes to press their claims here.

The only element of associational standing that Defendants challenge is the third prong, and only in a footnote. *See* Opp'n at 13 n.3. In any event, this argument is meritless. Defendants do not explain their assertion that "adjudication of an alleged injury to any particular employee or grant recipient would require the participation of that employee or grantee," Opp'n at 13 n.3, and no such necessity exists. Plaintiffs' request only requires that Defendants be enjoined from unlawfully dismantling a statutorily created agency. *See, e.g.*, *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 597 (D.C. Cir. 2015) (holding no individual participation necessary where nonprofit's suit "turn[ed] entirely on whether [the agency] complied with its statutory obligations, and the relief it [sought was] invalidation of agency action").

Organizational standing. An organization has standing to challenge actions that "perceptibly impair[]" its ability to provide services, thereby "interfer[ing] with [its] core business activities." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) (quotation omitted). The record amply establishes that Defendants' evisceration of IMLS impairs ALA's and AFSCME's ability to serve their members and perform their core business activities.

Defendants do not seem to dispute ALA's organizational standing. *See* Opp'n at 13 (acknowledging "the direct harm alleged by ALA"). Unquestionably, the termination of ALA's grants is cognizable harm, as is the loss of contracts and subgrants that will result from cuts of

grants to others. *See, e.g.*, Inouye Decl. ¶¶ 23–27, ECF No. 13-2; Supp. Inouye Decl. ¶¶ 8–16. ALA's inability to continue vital services it provides to its members is undisputed. *See, e.g.*, Inouye Decl. ¶ 24. So is the loss of data that ALA requires to offer its subscription-based "Benchmark" service. Fournier Decl. ¶ 6, ECF No. 13-11. "[I]njury to the organizations' daily operations due to agency action limiting their access to . . . information is the type of injury that courts have recognized as both concrete and particularized." *Am. Acad. of Pediatrics v. FDA*, 379 F. Supp. 3d 461, 477 (D. Md. 2019); *see also PETA v. USDA*, 797 F.3d 1087, 1095 (D.C. Cir. 2015).

AFSCME is similarly harmed by the loss of access to IMLS data, on which it relies during collective bargaining. *See* Billinger Decl. ¶¶ 6–8; Pls.' Br. at 35. Defendants argue that "AFSCME does not demonstrate that it will be wholly incapable of substituting the IMLS data with other sources." Opp'n at 12. That assertion contradicts the record evidence, which shows that it "would be *impossible* to replicate the scope of the information the Public Libraries Survey provides, and it would be prohibitively expensive to even try." Billinger Decl. ¶ 8. Defendants' position also misstates the test for standing, which is not whether a plaintiff will be "wholly incapable" of mitigating the harm that Defendants' unlawful actions cause; it is only whether the actions "perceptibly impair" their "core business activities." *All. for Hippocratic Med.*, 602 U.S. at 395; *see also, e.g.*, *Gulf v. Burgum*, No. 1:23-cv-00604, 2025 WL 928684, at *7 (D.D.C. Mar. 27, 2025) (collecting cases). That is uncontroverted here. Undermining a union's ability to negotiate on behalf of its library workers strikes at the core business of a union, and Defendants' casual speculation that it might not strike deeply enough is contrary to the evidence and meritless.

## B. The Case Is Ripe for Judicial Determination.

Defendants' contention that Plaintiffs' claims are unripe badly misunderstands the record. The harms established in the declarations submitted by Plaintiffs are not "dependent on 'contingent

future events,'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam); to the contrary, many of the harms have already occurred, and the rest are "certainly impending," *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996).

The uncontradicted evidence shows that about 85% of IMLS' staff was put on administrative leave at the end of March and will be fired by May 4. Inouye Decl. ¶ 4; Albright Decl. ¶ 1, ECF No. 20-1. The remaining staff cannot perform key agency functions, including evaluating and awarding grants, timely issuing funds, terminating grants in compliance with the law, or reviewing appeals of terminations. *Id.* ¶¶ 17–20. Nor can they process reimbursements for funds already expended by recipients; all the IMLS personnel responsible for processing reimbursements have been put on leave, and the only person left who has access to the system has no experience using it. *Id.* ¶ 17; *see also* Supp. Albright Decl. ¶ 6. Defendants dispute none of this.

Additionally, the uncontradicted evidence shows that the vast majority of competitive IMLS grants were terminated on April 8, although many recipients did not find out about the termination until a week later. Albright Decl. ¶ 2; *see also* Supp. Albright Decl. ¶¶ 3–5. Three state library grants were also terminated. Inouye Decl. ¶ 14. Five of ALA's six grants are among those already terminated. Inouye Decl. ¶ 23; Supp. Inouye Decl. ¶¶ 8–12. Defendants have gone even further, directing IMLS' payment processor not to process any approved reimbursement requests or any new payment orders until further notice. Albright Decl. ¶ 8; *see also* Supp. Albright Decl. ¶ 8.

Thus, there is no factual dispute that IMLS has already taken numerous actions to shutter IMLS that harm Plaintiffs. Defendants' only citation, to *Trump v. New York*, 592 U.S. 125 (2020), only highlights the ripeness of this case. The *Trump* plaintiffs challenged an unimplemented presidential memorandum directing an agency to report information to the President which would

enable him to implement the policy. *Id.* at 129–30. The agency had not yet "implement[ed] this general statement of policy" in any way; it had not even made its report to the President, much less "altered . . . operations in a concrete manner." *Id.* at 131–32. Here, by contrast, implementation of the decision to dismantle IMLS is already well along, rendering the case ripe for review.

### C. The Tucker Act Does Not Deprive This Court of Jurisdiction.

This Court has jurisdiction over Plaintiffs' claims, which are constitutional and statutory claims against Defendants' dismantling of IMLS. *See* Compl. ¶¶ 74–118. By contrast, the Tucker Act provides the Court of Federal Claims with exclusive jurisdiction over "contract claims against the government" for "money damages." *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992), *overruled in part on other grounds*, *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017); *see also* 28 U.S.C. §1491(a)(1). Because Plaintiffs do not assert any contract claims against the government, the Tucker Act does not deprive this Court of jurisdiction, as many courts have recently found in similar litigation.[3]

Determining whether the "essence" of a claim is contractual under the Tucker Act "depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (cleaned up). As a threshold matter, AFSCME does not have any grants with IMLS and thus could not bring suit in the Court of Federal Claims even if it wanted. But regardless, the source of

---

[3] *See S.F. Unified Sch. Dist. v. AmeriCorps*, No. 3:25-cv-02425, 2025 WL 1180729, at *7–11 (N.D. Cal. Apr. 23, 2025); *Widakuswara II*, 2025 WL 1166400, at *9–10; *Climate United Fund v. Citibank, N.A.*, No. 1:25-cv-00698, 2025 WL 1131412, at *9–12 (D.D.C. Apr. 16, 2025); *WRWC*, 2025 WL 1116157, at *12–15; *Chi. Women in Trades v. Trump*, No. 1:25-cv-02005, 2025 WL 1114466, at *8–10 (N.D. Ill. Apr. 14, 2025); *New York v. Trump*, No. 1:25-CV-00039, 2025 WL 1098966, at *1–3 (D.R.I. Apr. 14, 2025); *Maine v. USDA*, No. 1:25-CV-00131, 2025 WL 1088946, at *14–15 (D. Me. Apr. 11, 2025); Reconsideration/Stay Order, *Sustainability Inst. v. Trump*, No. 2:25-cv-02152 (D.S.C. April 9, 2025), ECF No. 52.

the rights upon which Plaintiffs base their claims are the U.S. Constitution and statutes, including the APA, and not the terms of any contract or grant agreements between Plaintiffs or their members and the government. *See Climate United Fund,* 2025 WL 1131412, at *9–10 (holding that claims brought under the APA, Constitution, and various statutes and regulations challenging EPA's termination of grants were not contract claims under the Tucker Act). Indeed, Plaintiffs do not rely on or even mention any recipient-specific terms and conditions of their or their members' grant awards, and no grant agreements are in the record.

The second prong of the inquiry—the type of relief sought or appropriate—also dictates that jurisdiction properly remains with this Court. Plaintiffs seek prospective declaratory and injunctive relief; they do not seek money damages. *See* Compl. at 28–29. "Plaintiffs do not ask for specific performance, nor do they ask the court to interpret the terms of any contract." *Climate United Fund*, 2025 WL 1131412, at *10. Indeed, the Court of Federal Claims could not even "provide the equitable relief Plaintiffs seek." *Id.* at *11.

Defendants attempt to fit a round peg in a square hole. First, Defendants contend that the Tucker Act deprives this Court of jurisdiction because Plaintiffs' alleged irreparable harm "involve[s] the impact" of grant terminations. Opp'n at 17. But the fact that this case "involves" grant terminations does not reflexively deprive this Court of jurisdiction under the Tucker Act. To be sure, the mass termination of grants is a significant part of Defendants' dismantlement of IMLS that Plaintiffs challenge. But the Tucker Act should not be interpreted "so broad[ly] as to deny a court jurisdiction to consider a claim that is validly based on grounds other than a contractual relationship with the government." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). And "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as money damages." *Bowen v. Massachusetts*, 487 U.S.

879, 893 (1988) (cleaned up). While ALA or its members would receive, at least preliminarily, withheld grant funds if this Court grants the injunctive relief Plaintiffs request, those funds would be incidental to the injunctive order temporarily undoing Defendants' shutdown of IMLS. *See Climate United Fund*, 2025 WL 1131412, at *10. And, again, AFSCME would not receive any of those funds, though their members would benefit from injunctive relief.

Finally, the Supreme Court's two-and-one-half page, Shadow Docket decision in *U.S. Department of Education v. California*, 145 S. Ct. 966 (2025), *see* Opp'n at 20–21, does not demand a different outcome to the Court's inquiry under Circuit precedent. "It was true before *California*, and it remains true now, that whether a claim is at its essence contractual for the Tucker Act depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Widakuswara II*, 2025 WL 1166400, at *9 (cleaned up) (holding AFSCME's claims not subject to Tucker Act). Further, *California* is readily distinguishable. There, "the source of the rights relied on by the plaintiffs were contained *in the grant agreements*," *id.*; here, as discussed above, Plaintiffs rely on rights enshrined in the Constitution and provided by statutes.

The pre-*California* district court decision on which Defendants heavily rely, *U.S. Conference of Catholic Bishops v. U.S. Department of State*, No. 1:25-cv-00465, 2025 WL 763738 (D.D.C. Mar. 11, 2025), Opp'n at 21–22, is distinguishable for the same reason. There, a single entity requested reimbursement under and reinstatement of a specific set of federal contracts. *U.S. Conf. of Cath. Bishops*, 2025 WL 763738, at *5–8. Here, by contrast, Plaintiffs bring constitutional and APA challenges to the legality of dismantling a congressionally established executive agency, including by terminating *en masse* grants the agency is statutorily required to issue. As explained above, Plaintiffs' claims do not rely on the terms of any particular grant agreement.

### D. The Civil Service Reform Act Does Not Channel Plaintiffs' Claims to an Administrative Body.

Nor must Plaintiffs' claims be considered first by the Merit System Protection Board (MSPB) or the Federal Labor Relations Authority (FLRA). Opp'n at 23–25. Plaintiffs' claims are plainly not "of the type" that Congress intended to be channeled. *Thunder Basin Coal Co. v. Reich*, 510 U.S 200, 200–01 (1994) (claims will only be channeled away from federal court into an administrative remedial scheme if it is "fairly discernible" that Congress intended to do so).

As a threshold matter, neither Plaintiffs nor their members assert claims based on their own federal employment status or on behalf of IMLS employees challenging their placement on administrative leave or Reduction in Force notices. The MSPB and FLRA are limited jurisdiction tribunals that adjudicate claims brought by federal employees and unions representing federal employees to challenge agency actions *affecting their federal employment*. *See, e.g.*, *United States v. Fausto*, 484 U.S. 439, 455 (1988) ("The [CSRA] established a comprehensive system for reviewing personnel action taken against federal employees."). In a case challenging OPM's mass firing of federal probationary employees, a court recently held that the mere fact that a federal personnel action is "embedded within [a] dispute" between the government and private third parties does not divest the court of subject matter jurisdiction. *See Am. Fed'n of Gov't Emps., AFL-CIO v. OPM*, No. C 25-01780 WHA, 2025 WL 660053, at *7 (N.D. Cal. Feb. 28, 2025). The Ninth Circuit, in denying the government's stay application, affirmed that view. *See Am. Fed'n of Gov't Emps., AFL-CIO v. OPM*, No. 25-1677, 2025 WL 914823, at *1 (9th Cir. Mar. 26, 2025); *see also Widakuswara II*, 2025 WL 1166400, at *10. No citations in Defendants' brief support their naked assertion that the MSPB or FLRA are the exclusive venues for "other interested parties" in addition to federal employees or unions representing them. *See* Opp'n at 24.

Plaintiffs' claims are not "of the type" covered by the CSRA's administrative scheme for

the additional reason that Plaintiffs challenge Defendants' actions to dismantle IMLS. The fact that Defendants have elected to do this by firing sufficient personnel to incapacitate the agency does not change the nature of Plaintiffs' claims. The three factors that courts consider in deciding whether a claim should be channeled to an administrative body, summarized in *Thunder Basin*, 510 U.S at 186, confirm this conclusion. First, channeling would foreclose "effective judicial review," which Congress "rarely" permits in claims arising from agency action. *Axon Enter. v. FTC*, 598 U.S. 175, 186 (2023). The MSPB is empowered to review appeals of "final adverse action" within its limited jurisdiction when presented by federal "employee[s], or applicant[s] for employment," and annuitants. *See* 5 U.S.C. § 7701. The FLRA is empowered to adjudicate labor issues between federal employees and agencies, such as issues related to "the duty to bargain in good faith" and "unfair labor practices." *Id.* § 7105(a)(2). Channeling Plaintiffs' claims to a forum that will not hear them would foreclose effective review.

Second, Plaintiffs' suit is collateral to the CSRA's review provisions. Defendants' mass termination of IMLS staff effectively dismantles the agency by gutting its ability to perform its statutory duties, including issuing and implementing grants, and causing loss of technical assistance and other support, with profound effects on libraries, library workers, and users of library services. Those harms, unique to Plaintiffs, are distinct from harms arising directly from the federal employee-employer relationship between IMLS and its staff that the FLRA and MSPB are tasked with reviewing. This "distinguishes these claims from others that have attacked, substantively or procedurally, one agency's decision about one employee or its own workforce, which are the kinds of claims appellate courts have channeled into the CSRA." *Am. Fed'n of Gov't*

*Emps. v. OPM*, No. 3:25-cv-01780, 2025 WL 900057, at *3 (N.D. Cal. Mar. 24, 2025).[4]

Third, Plaintiffs' claims are outside the FLRA's and MSPB's expertise. Plaintiffs challenge the dismantlement of IMLS in violation of the Constitution, the APA, and other statutes creating the agency, requiring it to perform certain duties, and appropriating funds to the agency. Plaintiffs sue to prevent disruption to these statutorily required programs and services, which in turn will force libraries to close IMLS-funded programs, among other harms. Plaintiffs' claims are not intertwined with questions related to labor and employment that would benefit from the MSPB's or FLRA's expertise. *Id.* at *2 ("The [MSPB and FLRA] know[] a good deal about [employment and labor] policy, but nothing special about the separation of powers.").

## II. Defendants' Actions Irreparably Harm Plaintiffs.

Plaintiffs submitted evidence from a dozen witnesses of the immediate and irreparable harm that will be suffered by ALA, AFSCME, and their members: library workers, libraries, and those who use them. *See* Pls.' Br. at 28–36. Defendants attempt to write it all off as "alleged harms to third parties," "economic," or "speculative." Opp'n at 42. These arguments fail.

*First*, AFSCME is likely to lose bargaining power in contract negotiations on behalf of its many bargaining units of library workers due to loss of data or funding from IMLS. *See* Billinger Decl. ¶¶ 7–8; Gaber Decl. ¶ 29; Francis Decl. ¶ 28. Given that negotiating contracts to secure workplace protections for its members is a core function of AFSCME's, the impairment of that function is irreparable harm: "[O]bstacles [that] unquestionably make it more difficult for the [plaintiff] to accomplish [its] primary mission . . . provide injury for purposes . . . [of] irreparable harm." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

---

[4] The Supreme Court's decision to stay a preliminary injunction in this case did not address the district court's finding that the union plaintiffs could not be channeled, as the injunction did not apply to the union plaintiffs. *OPM v. Am. Fed'n of Gov't Emps.*, No. 24A904, 2025 WL 1035208, at *1 (U.S. Sup. Ct. April. 8, 2025).

*Next*, as explained in Part I(A) above, Plaintiffs can properly seek relief on behalf of their members. ALA's members include library workers and libraries that are unable to provide needed services. *See, e.g.*, Adams Decl. ¶¶ 7, 9; Bradley Decl. ¶ 4; Newman Decl. ¶¶ 6–9. AFSCME's members stand to be fired as a result of the substantial elimination of IMLS, and those members who are not fired will be harmed by understaffing and changed working conditions which cannot be redressed later. *See* Gaber Decl. ¶¶ 23–25, 30; Francis Decl. ¶ 27. Plaintiffs' members' ongoing and imminent harm are squarely at issue. *See, e.g.*, *Doctors for Am. v. OPM*, No. 1:25-cv-00322, 2025 WL 452707, at *8 (D.D.C. Feb. 11, 2025) (granting a temporary restraining order against removal of data based on harm to plaintiff's members).

*Second*, Defendants' attempt to dismiss Plaintiffs' injuries as merely "economic" fails. Opp'n at 43. Defendants acknowledge that economic losses that "threaten[] the very existence of the movant's business" are cognizable, *id.* at 42 (quoting *Wis. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)), but ignore that that is exactly what Plaintiffs' evidence shows. *See, e.g.*, Bradley Decl. ¶ 4 (IMLS funding is "the only funding" for "many rural and tribal libraries"); Adams Decl. ¶ 7 (without IMLS funding to state library, tribal library will lose its entire library catalog). Plaintiffs have identified numerous specific programs directed at ongoing needs that will imminently end. *See, e.g.*, *Id.* ¶ 9; Fournier Decl. ¶ 6; Naficy Decl. ¶ 8, ECF No. 13-13; Newman Decl. ¶ 9. These include vital literacy and financial literacy programs, inter-library lending programs and shared library catalogs, staff training, and public outreach programs. *See* Gaber Decl. ¶ 27; Johnston Decl. ¶ 13, ECF No. 13-20; Francis Decl. ¶¶17–18, 23, 25; Jacobson Decl. ¶ 6, ECF No. 13-12; Naficy Decl. ¶¶ 2–3, 8; Newman Decl. ¶ 9. As a result of Defendants' mass grant terminations, AFSCME members will lose their jobs; contractors hired to implement these programs will lose their contracts; and the workers who remain will find themselves in

13

understaffed libraries with changed working conditions through program changes. *See* Gaber Decl. ¶¶ 23–25, 30; Francis Decl. ¶ 27. These losses of access to libraries, librarians, services, and resources now cannot be remedied by an award of damages to grant recipients in the future.

The direct harm to ALA as an organization similarly renders it unable to continue its programs. The termination of five of ALA's six grants has forced the shutdown of numerous ALA projects midstream. *See* Inouye Decl. ¶¶ 23–24; Supp. Inouye Decl. ¶¶ 8–12. These grant terminations will prevent ALA from delivering services that are needed in communities now, including providing librarians with training and access to legal information. Supp. Inouye Decl. ¶ 10. They will also damage ALA's reputation in the community, as it ceases being able to provide services reliably. *See* Inouye Decl. ¶¶ 23–24, 29; Supp. Inouye Decl ¶ 5. "[B]ecause '[i]njury to reputation and goodwill is not easily measured in monetary terms,' it is 'often viewed as irreparable.'" *Jones v. District of Columbia*, 177 F. Supp. 3d 542, 547 (D.D.C. 2016)*see also WRWC*, 2025 WL 1116157, at *22. Defendants also ignore that stopping reimbursements for millions of dollars already expended by recipients will cause immediate chaos among those recipients far beyond the mere loss of funds. "[W]hen money is obligated and therefore expected (particularly money that has been spent and reimbursement is sought) and is not paid as promised, harm follows." *WRWC*, 2025 WL 1116157, at *22 (quoting *New York*, 2025 WL 715621, at *13).

Defendants lean heavily on *California*, 145 S. Ct. at 969, but there the Court found that that the loss of grants was remediable by a later damages remedy only because the State admitted that it had "the financial wherewithal to keep their programs running." There is no such evidence here; to the contrary, the record here shows that the harm is the loss of services and jobs that are needed now, not years from now.

The dissolution of the agency will also create irreparable harm in the form of lost data,

knowledge, and expertise. *See* Inouye Decl. ¶ 33; Fournier Decl. ¶¶ 2–11. Even a temporary disruption to the data collection for longitudinal studies will deprive Plaintiffs, their members, and the public of valuable information. *See* Inouye Decl. ¶ 25(b); Fournier Decl. ¶¶ 10–11; Billinger Decl. ¶¶ 7–8. AFSCME regularly uses this data for contract renegotiations; indeed, at least one bargaining unit has a contract expiring at the end of June. *Id.*; Francis Decl. ¶ 28. Additionally, Plaintiffs and their members experience irreparable harm from the loss of IMLS staff expertise. *See* Inouye Decl. ¶ 5; Neal Decl. ¶ 5, ECF No. 13-14; Adams Decl. ¶ 8.

     *Third*, as explained in Part I(B), *supra*, these injuries are far from speculative; indeed, many are already occurring.

## III. Plaintiffs Have Shown a Likelihood of Success on the Merits.

### A. Defendants' Objections to Plaintiffs' APA Claims Lack Merit.

#### 1. The decision to dismantle IMLS is a discrete and final agency action.

     Defendants describe their decision to dismantle IMLS as a "preliminary" "collection" of "general agency operations" that are "impossible to litigate" under the APA. Opp'n at 25, 26, 28. But Defendants' "repeated incantation of the word[] 'programmatic' . . . cannot change the character of what is actually going on." *NTEU*, 2025 WL 942772 at \*9. Defendants have decided to incapacitate a federal agency and have taken significant strides to effectuate this decision, making it subject to APA review.

     As a court in this district recently stated, "the impending closure of [an] agency" is "an action that can be a subject of review under the APA." *Id.* at \*13. Contrary to Defendants' arguments, Plaintiffs do "not challenge the exercise of the agency's discretionary authority to regulate activities within its purview or to enforce particular statutory provisions." *Id.* at \*12. They challenge "the decision to shut down the agency completely." *Id.* Regardless of whether the Court analyzes Defendants' behavior as implementing a single decision to dismantle IMLS or as a series

of actions to that end, that behavior cannot escape APA review. *Compare id.* at *9 (concluding there was "at least one discrete order before the Court"), *with Widakuswara II*, 2025 WL 1166400, at *11 (granting preliminary injunction against dismantlement of the U.S. Agency for Global Media and analyzing several agency actions toward that end under the APA). "The 'discrete' requirement does not mean that if an agency takes a slew of actions quickly, the Court loses its ability to review each of them under the APA." *Widakuswara II*, 2025 WL 1166400, at *11; *see also WRWC*, 2025 WL 1116157, at *10 (rejecting argument that funding freezes of numerous agencies were "impermissibly broad, programmatic challenges").

Defendants' decision to dismantle IMLS, and the actions taken to effectuate that decision, are final agency actions under *Bennett v. Spear*, 520 U.S. 154 (1997). *See* Pls.' Br. at 16–18. Whether or not Defendants' actions are "preliminary," Opp'n at 27–28, does not impact finality. "*[F]inal* does not mean *permanent*.*" Widakuswara II*, 2025 WL 1166400, at *12. The first prong of finality looks to whether decisionmaking has come to an end, not to whether the decision has been fully implemented or may be revisited. *See Bennett*, 520 U.S. at 178. Regardless of where Defendants are on their journey to render IMLS "unnecessary," Exec. Order No. 14238, 90 Fed. Reg. 13043, § 1 (Mar. 14, 2025), "the agency has made decisions, communicated them to their employees, contractors, and grantees, and thereby altered their rights and obligations." *Widakuswara II*, 2025 WL 1166400, at *12 (quoting *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436 (D.C. Cir. 1986) (an "indicia of finality" is if the agency action causes a "direct and immediate . . . effect on the day-to-day business of the parties challenging the action")).

Defendants' argument that Plaintiffs fail to satisfy the second prong of the *Bennett* test for final agency action, Opp'n at 28–29, fails because it too hinges on Defendants' characterization of their actions to dismantle IMLS as "programmatic," *id.* at 29. As Plaintiffs explained, legal

consequences are flowing from Defendants' actions. Pls.' Br. at 18; *see also Widakuswara II*, 2025 WL 1166400, at *12.

### 2. No law gives Defendants discretion to dismantle IMLS.

Defendants' actions are not within their discretion. To be clear, Plaintiffs challenge neither "[i]ndividual staffing decisions" nor IMLS's "compliance with grant agreements." Opp'n at 29, 32. To characterize terminating 85% of the agency's staff in one fell swoop, Inouye Decl. ¶ 4, such that it no longer has the personnel necessary to perform statutorily mandated functions, Albright Decl. ¶¶ 16–18, freezing the processing of grant funds, *id.*, and terminating grants *en masse*, *id.*, Supp. Albright Decl. ¶ 3, as "administrative decisions" committed to agency discretion, *see* Opp'n at 30, is absurd. This Court is "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (cleaned up).

Given the APA's strong presumption favoring judicial review, *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015), the "committed to agency discretion by law" exception to review is limited. *Dep't of Commerce*, 588 U.S. at 772. And Defendants do not have discretion under any source of law to incapacitate IMLS. The Constitution confers such authority on the legislature, not the executive branch, and Congress has not enacted any statute providing such authority to Defendants. *See NTEU*, 2025 WL 942772, at *23 (holding that "defendants are not free to eliminate an agency created by statute on their own" and such action likely violates the separation of powers); *Widakuswara v. Lake ("Widakuswara I")*, 25-CV-2390, 2025 WL 945869, at *2, *7 (S.D.N.Y. Mar. 28, 2025) (actions taken to "eliminate" the "functions" of agency were not authorized by Congress and likely violated separation of powers).

Whereas Defendants emphasize their discretion to "reallocat[e] resources," Opp'n at 31, they do not have discretion *not* to expend appropriated funds. *See In re Aiken County*, 725 F.3d

255, 261 n.1 (D.C. Cir. 2013); *S.F. Unified Sch. Dist.*, 2025 WL 1180729, at *4 (finding "no indication that Congress intended to commit the agency's imposition of grant conditions to its discretion thereby exempting such actions entirely from judicial review"); *Widakuswara I*, 2025 WL 945869, at *7 ("By withholding the funds … the executive is usurping Congress' power of the purse."); *AVAC*, 2025 WL 752378, at *1 (refusing to spend appropriated funds likely violates the separation of powers). Plaintiffs do not challenge Defendants' individual spending decisions, rendering *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993), inapposite. Rather, Plaintiffs challenge Defendants' refusal to spend appropriated funds at all as well as their refusal to issue grants mandated by Congress. Nor do Defendants have discretion to fail to comply with statutory directives, as they concede. Opp'n at 30–31.

### 3. Dismantling IMLS is arbitrary and capricious.

Defendants do not respond substantively to Plaintiffs' argument that their decision to dismantle IMLS is arbitrary and capricious. Nor do they dispute the key facts underpinning these arguments, or point to anything contradictory in the record. There is thus no dispute that they failed to (1) articulate a reasoned explanation for their decision to shutter IMLS or taking actions to implement it, *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); (2) heed the severe and obvious harms stemming from the dissolution of the country's primary funder of library services; (3) take into account libraries', workers', and communities' serious reliance interests on the continued existence of IMLS and its grant programs; and (4) consider less drastic alternatives to shutting down the agency. *See* Pls.' Br. 18–23. Their actions are thus arbitrary and capricious.[5]

---

[5] Defendants also do not respond to Plaintiffs' argument that Defendants Sonderling and IMLS are unlawfully withholding or delaying mandatory agency action, in violation of 5 U.S.C. § 706(1).

**4. Dismantling IMLS is contrary to law.**

Defendants' response to Plaintiffs' contrary-to-law claims misrepresent the claims and ignore facts on the record. None of Defendants' arguments holds water.

1. Defendants suggest that Plaintiffs argue or must show that Congress appropriated funds specifically *for Plaintiffs*. Opp'n at 33. Not so. *See* Pls.' Br. at 24–25. When Congress appropriates funds to an agency to use for a particular purpose, the statute requires the agency to make good-faith efforts to obligate and expend all funds for the purpose for which they were appropriated. This is doubly true where, as here, Congress did not give the agency discretion to spend less than the amount appropriated. *See* Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, 138 Stat. 460, 697; Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4, 139 Stat. 9. Plaintiffs' claims do not require appropriations earmarked for Plaintiffs themselves; they require showing only that the government is failing to implement an appropriation from which Plaintiffs benefit. *See New York*, 2025 WL 715621, at *10; *WRWC*, 2025 WL 1116157, at *16; *see also* 2 C.F.R. § 200.211(c); *id.* § 200.340. In any case, the Grants to States program requires IMLS to issue grants pursuant to a specified formula. 20 U.S.C. § 9131.

Defendants' assertion that "Plaintiffs do not otherwise explain how the specific services the agencies [sic] provide are statutorily mandated," Opp'n at 34, is simply wrong. IMLS is statutorily required to issue various grants and provide specific services, including data collection. Pls.' Br. at 3–5. Plaintiffs do not speculate, but instead show through declarations that IMLS *currently* does not have the requisite staff to issue, process, terminate, or review terminations of grants or to conduct research pursuant to its statutory mandates, Albright Decl. ¶¶ 16–18, and that IMLS has terminated the vast majority of grants despite its statutory mandate to issue those grants, *id.* ¶ 2, Supp. Albright Decl. ¶ 3. Defendants put forth no record evidence that IMLS is fulfilling

these statutory requirements. A statute also *requires* there to be a Board, 20 U.S.C. § 9105a, which Defendants concede they abolished. *See* Opp'n at 16. That Defendants might, at some unspecified future time, appoint new Board members does not cure the ongoing statutory violation.

2. Defendants contend the Impoundment Control Act ("ICA") is not enforceable via the APA because it provides for enforcement by the Comptroller General. Opp'n at 34. But recent cases have rejected that argument and evaluated ICA claims under the APA, ultra vires, and/or separation of powers theories. *See New York*, 2025 WL 715621, at *9–11; *AVAC*, 2025 WL 752378, at *14. Even if Defendants' halting grant fund reimbursements and terminating the vast majority of grants were only a "pause" in spending, Opp'n at 34, that still qualifies as an impoundment. An "impoundment" includes actions temporarily or permanently withholding, delaying, or precluding the obligation or expenditure of appropriated funds. Funds may be *temporarily* deferred only in narrow circumstances not met here. *See* 2 U.S.C. § 684. Defendants' reliance on *City of New Haven, Conn. v. United States*, 809 F.2d 900 (D.C. Cir. 1987), is misplaced. There, the D.C. Circuit reaffirmed congressional control over the executive branch's deferral of appropriated funds. *Id.* at 907–08.

3. Defendants' Paperwork Reduction Act response is incorrect. Agencies are not free to forego a "collection of information" under the Act that has been approved by the OMB. *See* 44 U.S.C. § 3507; *see also* 5 C.F.R. § 1320.10(g). Congress's requirement that an agency obtain OMB approval prior to making a "substantive or material modification to a collection of information" would be pointless if agencies could simply fail to collect the information altogether without approval. Further, permitting an agency unilaterally to decide not to complete an approved collection of information violates other purposes of the law, such as to "provide for the dissemination of public information" and "ensure the greatest possible public benefit from"

information collected. 44 U.S.C. § 3501(2), (7).

**B. Defendants' Dismantling of IMLS Is Unconstitutional.**

Only Congress has the authority to make laws; only Congress has the ability to repeal them. U.S. Const. art. I, § 1. By issuing an executive order dismantling IMLS to the point of preventing it from fulfilling its statutory mission, the President has effectively repealed the Museum and Library Services Act and subsequent reauthorizations. In so doing, he has overstepped the separation of powers by interfering with the authority of Congress, and he has failed to fulfill his responsibility to take care that the laws of the United States be faithfully executed.

**1. Defendants have violated the separation of powers.**

"Needless to say, the President is without authority to set aside congressional legislation by executive order." *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 551 (D.C. Cir. 1999). Nor can the President refuse to disburse funds duly appropriated by Congress for a particular purpose and thus "run roughshod over a 'bulwark of the Constitution' by interfering with Congress's appropriation of federal funds." *Nat'l Council of Nonprofits v. OMB*, No. 1:25-cv-00239, 2025 WL 368852, at *12 (D.D.C. Feb. 3, 2025) (quoting *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1347 (D.C. Cir. 2012)). As explained in Plaintiffs' opening brief, that is precisely what Defendants do by eviscerating IMLS until it is incapable of carrying out the mission entrusted to it by Congress. *See* Pls.' Br. at 9–16.

Defendants protest that the President's putative authority to unilaterally terminate individual grants does not implicate these principles. Opp'n at 37. But the issue here is not individual grant awards. Congress appropriated $294,800,000 to IMLS through September 30, 2025, and directed it to disburse numerous grants. By cancelling the vast majority of IMLS's competitive grants and withholding disbursements without regard for the individual circumstances

of each award, the President frustrates the will of Congress, leaving millions of dollars in limbo. *See In re Aiken Cnty.*, 725 F.3d at 259.

By reducing IMLS staff to a skeleton crew, Defendants have prevented it from doing its job. Defendants have not only indiscriminately terminated grants, effectively seizing federal funds and intruding upon Congress's power of the purse. They have also caused IMLS to lack the capacity to undertake those terminations in a lawful, orderly manner, as required by the governing statutes and regulations. *See* Albright Decl. ¶¶ 17–21 (explaining steps IMLS must follow to terminate grants); Supp. Albright Decl. ¶¶ 5–8 (confirming that IMLS is not following those steps). For example, the April 15 letter that Defendant Sonderling sent to ALA and multiple grant recipients who did *not* receive previous notification that their grants had been terminated, *see id.* ¶ 5, Supp. Inouye Decl. Ex. B, lacks any detail about why the grant awards are being terminated, so it cannot serve as notice of termination under 2 C.F.R. § 200.341. *See also* IMLS, *Special Note: General Terms and Conditions for IMLS Discretionary Grant and Cooperative Agreement Awards With Award Dates after December 21, 2020*, at 20–21, https://perma.cc/2J4M-XY7K. This is not "routine execution or termination of [] grant agreements." Opp'n at 37.

Whatever the President's executive authority to set policy and terminate grants may be, it cannot include the power to gut an agency until it is incapable of following the law. *See* Pls.' Br. at 9–14; *see also New York*, 2025 WL 715621, at *1 (holding "[t]he Executive's categorical freeze of appropriated and obligated funds fundamentally undermines the distinct constitutional roles of each branch of our government").

### 2. Defendants have violated the Take Care Clause.

Defendants' effective repeal of the Museum and Library Services Act and evisceration of IMLS likewise violates the Take Care Clause. *See* Pls.' Br. at 14–16. Plaintiffs challenge not the

President's discretionary policy choices but violations of clear limits on executive power. "The Take Care Clause cannot be used to bypass agencies' limited status as creatures of statute, 'possess[ing] only the authority that Congress has provided them.'" *Marin Audubon Soc'y v. Fed. Aviation Admin.*, 121 F.4th 902, 914 (D.C. Cir. 2024) (quoting *Nat'l Fed'n of Indep. Bus. v. OSHA*, 595 U.S. 109, 117 (2022)). "Withholding congressionally appropriated funds, and effectively shuttering a congressionally created agency simply cannot be construed as following through on the constitutional mandate of the Take Care Clause." *Widakuswara II*, 2025 WL 1166400, at *15.

Defendants' claim that they are "not aware of any case that has ever held that the Take Care Clause can be used as a mechanism to obtain affirmative relief," Opp'n at 38, is simply incredible. Courts have recently held exactly that. *See, e.g.*, *Widakuswara I*, 2025 WL 945869, at *7; *NTEU*, 2025 WL 942772, at *20-23. Nor are Defendants correct that Take Care Clause liability is limited to the President. Opp'n at 40. Constitutional limits on presidential power apply to "[t]he President—*and his subordinates*." *New York v. Trump*, No. 1:25-cv-01144, 2025 WL 573771, at *24 (S.D.N.Y. Feb. 21, 2025). It is tautological that it is the President's duty to take care that the laws be faithfully executed; and he may violate that duty in the course of directing others to take actions he could not lawfully take himself.

### C. In the Event Plaintiffs' Other Claims Are Not Yet Ripe, This Court May Order Relief Under an Ultra Vires Theory.

As Defendants acknowledge, Opp'n at 40, where other relief is unavailable, "the individual is left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law." *Am. Sch. Of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902). By dismantling IMLS in violation of numerous statutes, Defendants have done just that. Defendants' contention that because Plaintiffs assert other claims they cannot pursue an ultra vires claim, is unfounded; there is no reason that Plaintiffs cannot pursue multiple alternative

paths to relief. *See NTEU*, 2025 WL 942772, at *20 (holding that plaintiffs established likelihood of success on their ultra vires, constitutional, and APA claims, and granting preliminary injunction against dismantling of agency).

## IV. The Balance of the Equities and the Public Interest Support a Preliminary Injunction Pausing the Dismantling of IMLS.

The public interest and balance of the equities weigh strongly in favor of granting preliminary relief in this case. The benefits of a preliminary injunction are twofold. First, the public has a strong interest in IMLS's continued funding of its grantees and their programs, which provide essential and irreplaceable library services to individuals in their communities. *See United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 203 (2003); 20 U.S.C. § 9121. Second, "there is a 'substantial public interest in having governmental agencies abide by the federal laws.'" *Massachusetts v. NIH*, No. 25-cv-10338, 2025 WL 702163, at *32 (D. Mass. Mar. 5, 2025) (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

By contrast, Defendants have no legitimate interest in unlawfully dissolving the IMLS, for "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017); *see also C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 218 (D.D.C. 2020); *Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*, No. 1:25-cv-00511, 2025 WL 752367, at *16 (D.D.C. Mar. 10, 2025). While Defendants claim that a preliminary injunction would harm the public interest by disrupting the agencies' efforts to comply with the President's agenda, Opp'n 44, "this case is not about how the executive exercises his discretion." *NTEU*, 2025 WL 942772, at *43 (rejecting the same argument by the government). The public is not served by allowing Defendants to "overstep[] their statutory and constitutional authority and usurp[] the power of the members of Congress, who were democratically elected by the people in every state in the union." *Id.*

The requested relief does not preclude Defendants from executing the President's priorities in a manner that is consistent with constitutional and federal requirements. As the court explained in *WRWC*, a preliminary injunction "does not prevent the Government from making funding decisions in specific cases according to processes like those established in 2 C.F.R. § 200.340; it simply enjoins sweeping agency action that was likely arbitrary and capricious and in excess of statutory authority." 2025 WL 1116157, at *23; *see also NTEU*, 2025 WL 942772, at *45.

Nor does the requested relief hinder Defendants' ability to act as responsible stewards of public funds. Defendants contend that any grants that are disbursed because of a preliminary injunction may not be retrievable after, Opp'n 44, but they merely assert that to be the case, without any argument or evidentiary support. Regardless, "IMLS comprised less than .0004% of federal expenditures" in all of 2024. Pls.' Br. at 37. Defendants' speculative harm represents a miniscule fraction of federal spending—far outweighed by the very real and permanent harm the public will experience due to Defendants' illegal shuttering of IMLS. Weighing all these factors together, the public interest and balance of the equities strongly support granting Plaintiffs' motion.

## V. There Is No Basis for Requiring Posting of a Bond.

This Court should reject Defendants' request for bond. Opp'n at 45. "A bond 'is not necessary where requiring [one] would have the effect of denying the plaintiffs their right to judicial review of administrative action.'" *NCN II*, 2025 WL 597959, at *19 (quoting *Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971) (collecting cases)); *see also* Pls.' Br. at 38 n.8. That is especially true "where the defendants are already constitutionally required to distribute funds in accordance with the yearly appropriations bill, so a bond would merely impose a financial barrier to litigation for plaintiffs seeking to vindicate their statutory and constitutional rights." *Widakuswara II*, 2025 WL 1166400, at *15 (citation omitted).

## CONCLUSION

For the reasons stated above and in Plaintiffs' opening brief, this Court should grant Plaintiffs' motion for a preliminary injunction.

Dated: April 28, 2025                                   Respectfully submitted,

/s/ Rachel L. Fried
Rachel L. Fried (DC Bar No. 1029538)
Orlando Economos (DC Bar No. 90013791)
Kayla M. Kaufman (DC Bar No. 90029091)
Robin F. Thurston (DC Bar No. 1531399)
Skye Perryman (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
rfried@democracyforward.org
oeconomos@democracyforward.org
kkaufman@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org


/s/ Chris Gair
Chris Gair (Ill. Bar No. 6190781)*
Vilia Dedinas (Ill. Bar No. 6191614)*
John Gallo (Ill. Bar No. 6193988)*
Ingrid Yin (Ill. Bar No. 6339857)*
Gair Gallo Eberhard LLP
1 E. Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 600-4900
cgair@gairgallo.com
vdedinas@gairgallo.com
jgallo@gairgallo.com
iyin@gairgallo.com

*Counsel for Plaintiffs*

*Admitted pro hac vice