UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN LIBRARY ASSOCIATION,  )
*et al.*,                      )
                               )
      **Plaintiffs,**           )
                               )
      v.                       )  Civil Case No. 25-1050 (RJL)
                               )
KEITH SONDERLING, Acting Director, )
Institute of Museum and Library Services, )
*et al.*,                      )
                               )
      **Defendants.**           )

## MEMORANDUM ORDER
May __1__, 2025 [Dkt. #13]

This matter initially came before the Court on plaintiff American Library Association's ("ALA") and plaintiff American Federation of State, County and Municipal Employees, AFL-CIO's ("AFSCME") motion for a preliminary injunction ("PI"). *See* Pls.' PI Mot. [Dkt. #13]; Pls.' Mem. in Supp. of PI Mot. ("Pls.' PI Mem.") [Dkt. #13-1]. Plaintiffs sought a decision on the PI by May 4, 2025, as defendants intend to execute a "mass termination of [Institute of Museum and Library Services] staff" on that day. Pls.' PI Mot. at 1.

When the Court held oral argument on the PI motion on April 30, 2025, it conferred with the parties and, given the imminent firings, plaintiffs moved to convert the PI motion into a motion for a temporary restraining order ("TRO"). The Court agreed to do so.[1] *See*

---

[1] The Court did so over defense counsel's objection that had no apparent legal basis to support it!

1

Min. Entry (Apr. 30, 2025). As such, the Court now finds that plaintiffs have met their burden to obtain a TRO.[2] However, the Court will grant only a narrow TRO to preserve the status quo as of the date of this Order. This will prevent additional harm while allowing the Court to further consider the parties' briefing on the PI.

I. **BACKGROUND**

The following are the facts as alleged by plaintiffs. In 1996, Congress passed the Museum and Library Services Act ("MLSA"), which established the Institute of Museum and Library Services ("IMLS"). Compl. ¶ 15. IMLS is a small, independent agency which awards grants and offers services to libraries and museums. *Id.* ¶¶ 1, 15, 17. The MLSA sets out multiple requirements for IMLS, including certain grants which must be issued and certain qualifications which the Director must possess. *Id.* ¶¶ 19–29. Congress appropriated almost $300 million to IMLS for 2025. *Id.* ¶ 16.

On March 14, 2025, President Trump issued an Executive Order titled "Continuing the Reduction of the Federal Bureaucracy," which declared IMLS "unnecessary" and ordered that it "be eliminated to the maximum extent consistent with applicable law." Exec. Order No. 14,238, 90 Fed. Reg. 13,043 (Mar. 14, 2025). Shortly thereafter, President Trump designated Deputy Secretary of Labor Keith Sonderling as Acting Director of IMLS, Compl. ¶ 37, and officials from the Department of Government Efficiency arrived at IMLS's offices to begin "shutting down the agency," *id.* ¶ 40. Defendants put the vast

---

[2] Since "[t]he same standard applies to both temporary restraining orders and to preliminary injunctions," the Court is able to rule on the TRO with the benefit of the parties' briefing on the PI. *See, e.g., Sterling Commer. Credit – Mich., LLC v. Phoenix Indus. I, LLC*, 762 F. Supp. 2d 8, 12 (D.D.C. 2011) (quoting *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009)).

2

majority of IMLS's approximately 75 employees on administrative leave and fired all members of IMLS's Board. *Id.* ¶¶ 41–42, 47. Defendants have also been broadly terminating IMLS grants and contracts, including "the vast majority of competitive IMLS grants." *See id.* ¶ 48; Pls.' Reply in Supp. of PI Mot. ("Pls.' Reply") [Dkt. #34] at 6.

On April 7, 2025, plaintiffs filed suit in this Court. Plaintiffs then filed their PI motion, which was fully briefed before the Court converted it into a TRO motion. *See generally* Defs.' Opp'n to Pls.' PI Mot. ("Defs.' Opp'n") [Dkt. #21]; Pls.' Reply.

## II.   ANALYSIS

To obtain a TRO, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that the moving party would suffer irreparable injury if the temporary restraining order were not granted; (3) that such an order would not substantially injure other interested parties; and (4) that such an order furthers the public interest." *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011) (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). The last two factors merge when the Government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Here, plaintiffs have met their burden to obtain a TRO. *First*, they have shown a substantial likelihood of success on the merits.[3] The wholesale termination of grants and services and the mass layoffs appear to violate the clear statutory mandates outlined in the MLSA. *See, e.g.*, 20 U.S.C. § 9103(a)(3) (The Director "shall be appointed from among individuals who have special competence with regard to library and information services"

---

[3] At the outset, the Court finds that plaintiffs will very likely be able to establish that they have standing, that this case is ripe, and that this Court has jurisdiction.

or "special competence with regard to museum services"); *id.* § 9108(a) ("The Director shall regularly support and conduct, as appropriate, policy research, data collection, analysis and modeling, evaluation, and dissemination of information to extend and improve the Nation's museum, library, and information services."); *id.* § 9131(b) ("From the sums appropriated . . . the Director shall award grants from minimum allotments [of $680,000] . . . to each State."); *id.* § 9161 ("[T]he Director shall award grants to Indian tribes and to organizations that primarily serve and represent Native Hawaiians."); *id.* § 9162(a) ("[T]he Director shall establish and carry out a program to enhance the quality of library services nationwide and to provide coordination between libraries and museums . . . ."). Moreover, defendants' conduct contravenes Congress's appropriation of almost $300 million to IMLS. Plaintiffs are therefore likely to succeed in showing that defendants' actions to unilaterally shutter IMLS violate, at minimum, the Administrative Procedure Act. *See* Compl. ¶¶ 88–107.

*Second*, plaintiffs have demonstrated irreparable injury. Plaintiffs point to myriad harms—supported by declarations—to ALA, AFSCME, and their members. *See* Pls.' PI Mem. 28–35. Plaintiffs have established that the grant terminations, loss of access to IMLS expertise and services, and loss of access to IMLS data have forced libraries to end programs midstream, fire employees, and, in some cases, completely shutter. *See id.* These are not merely economic harms. *See, e.g.*, Alan Inouye Decl. [Dkt. #13-2] ¶ 9 (terminating grants "would reduce funding for important tools to put people to work or retrain them for new fields," "immediately reduce literacy programs," and "immediately reduce the availability of critical services for students, researchers, and innovators"); *id.* ¶ 18 ("I

4

believe that without NAB and NAE grants, many tribal libraries would cease to exist."); *id.* ¶ 29 ("ALA and libraries across the nation would experience the loss of project benefits, as well as reputational harm for ending projects and staffing mid-stream."); Jane Billinger Decl. [Dkt. #13-17] ¶¶ 6–8 ("[T]he lack of access to IMLS survey [data] will immediately reduce the bargaining power of all AFSCME-affiliated unions representing library employees around the country, and this harm will be irreparable because once a CBA is executed, it is a binding contract with a fixed duration."). These harms are neither speculative nor remediable.

*Third*, the balance of the equities and public interest tip in favor of granting a limited TRO. Defendants assert that disrupting IMLS's efforts to comply with the Executive Order harms the public interest, *see* Defs.' Opp'n 43–44, but the Court finds that the public interest in compliance with MLSA's mandates and in preserving crucial access to library services outweighs defendants' claimed interest.

### III.   CONCLUSION

For the reasons set forth above, the Court will **GRANT IN PART** plaintiffs' motion for a TRO. The Court will not, at this time, issue a TRO providing all of the relief sought by plaintiffs. Instead, the Court will issue a narrow TRO preserving the status quo as of this Order.

Accordingly, it is hereby

**ORDERED** that defendants Keith Sonderling, Institute of Museum and Library Services ("IMLS"), Amy Gleason, U.S. DOGE Service, U.S. DOGE Service Temporary Organization, Russel Vought, and U.S. Office of Management and Budget (together, the

"agency defendants") shall not take any further actions to dissolve IMLS or its operations; it is further

**ORDERED** that the agency defendants shall not place any additional IMLS staff on administrative leave; it is further

**ORDERED** that the agency defendants shall not terminate the employment of any IMLS staff; it is further

**ORDERED** that the agency defendants shall not further pause, cancel, or otherwise terminate IMLS grants or contracts or fail to fund such grants or contracts for reasons other than grantees' or contractors' non-compliance with applicable grant or contract terms; and it is further

**ORDERED** that by May 6, 2025, the parties shall submit a joint status report (1) informing the Court whether the parties require any supplemental briefing on the preliminary injunction and, if so, proposing a briefing schedule; and (2) stating whether the parties consent to the Court extending this temporary restraining order until the Court issues a ruling on the preliminary injunction or the case is otherwise resolved.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge