IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN LIBRARY ASSOCIATION, *et al.*,<br><br>                Plaintiffs,<br><br>    v.<br><br>KEITH SONDERLING, in his capacity as Acting Director of the Institute of Museum and Library Services, *et al.*,<br><br>                Defendants. | No. 25-cv-01050-RJL |

**DEFENDANTS' MOTION FOR RECONSIDERATION
OF THE MAY 1, 2025, MEMORANDUM ORDER AND
NOTICE OF SUPPLEMENTAL AUTHORITY**

Two days after this Court temporarily enjoined Defendants' efforts to comply with Executive Order 14,238, *see* Mem. Order, ECF No. 36 (May 1, 2025) ("May 1, 2025, Memorandum Order" or "TRO"), the Court of Appeals stayed an analogous order in a strikingly similar case, reasoning that the Government was "likely to succeed on the merits [in that case] because the district court likely lacked subject-matter jurisdiction to enjoin [the agency's] personnel actions and to compel the agency to restore [grants the agency had canceled]." *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *2 (D.C. Cir. May 3, 2025).[1] That dispositive analysis applies here with equal force. In light of this guidance from the D.C. Circuit—issued in a case that cannot meaningfully be distinguished from the one before this Court—Defendants respectfully ask that this Court reconsider its May 1, 2025, Memorandum

---

[1] Plaintiffs-Appellees have filed an emergency petition for rehearing en banc. *See* Pet. For Rehearing En Banc, *Widakuswara v. Lake*, No. 25-5144 (D.C. Cir. May 5, 2025).

Order and dissolve the extant temporary restraining order.² For the same reason, this Court should also deny the pending motion for a preliminary injunction.

Under Federal Rule of Civil Procedure 54(b), "the Court can revise an interlocutory order 'as justice requires.'" *Peck v. SELEX Sys. Integration, Inc.,* 270 F. Supp. 3d 107, 117 (D.D.C. 2017) (quoting *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011)). [T]he moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." *Id.* (citing *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 85 (D.D.C. 2009)). "[R]econsideration may be warranted . . . where a court failed to consider controlling law or where a significant change in the law occurred after the decision was rendered." *Id.* (quotation omitted).³ In this case, after this Court issued the May 1, 2025, Memorandum Order, the Court of Appeals provided guidance on the controlling law in *Widakuswara*. That guidance compels reconsideration of the TRO.

In *Widakuswara*, plaintiffs challenged the efforts of United States Agency for Global Media (USAGM) to comply with Executive Order 14,238, both with respect to personnel

---

² Consistent with Local Civil Rule 7(m), Defendants' counsel conferred with Plaintiffs' counsel concerning the relief sought herein. Plaintiffs' counsel indicated that Plaintiffs oppose Defendants' motion for reconsideration.

³ Defendants recognize this motion could, alternatively, be viewed as a motion to modify an injunction pursuant to Rule 62(c) or to alter a judgment pursuant to Rule 59(e). Under either of those applicable frameworks, the relevant standard would allow reconsideration if there is a "change of circumstances between entry of the injunction and the filing of the motion [for reconsideration] that would render the continuance of the injunction in its original for inequitable," *Fox Television Stations, Inc. v. FilmOn X, LLC*, 968 F. Supp. 2d 134, 140 (quoting *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993) (Rule 62(c)) or "there is an intervening change of controlling law," *id.* (quoting *Fox. V. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C Cir. 2004)) (Rule 59(e)). In light of the D.C. Circuit's decision in *Widakuswara*, both standards counsel in favor of granting Defendants' motion.

decisions and as to grant cancellations. The district court held that it had jurisdiction to adjudicate both kinds of claims, and issued a preliminary injunction requiring USAGM to, *inter alia*, "(1) restore its employees and contractors to their pre-March 14 status," and "(2) restore its FY 2025 grants with" two of its grantees. The Court of Appeals granted a stay of this injunction by a divided vote, concluding that the district court likely lacked jurisdiction as to both categories of claims. *See Widakuswara*, 2025 WL 1288817, at *2

With respect to the first category—claims challenging the agency's personnel actions—the D.C. Circuit explained that Congress "established comprehensive statutory schemes for adjudicating employment disputes with the federal government," including the Merit Systems Protection Board, the Office of the Special Counsel, the Federal Labor Relations Authority, the Foreign Service Labor Relations Board, the Foreign Service Grievance Board, and the Civilian Board of Contract Appeals. *Id.* The Court of Appeals emphasized: "these remedial schemes 'provide[ ] the exclusive procedures by which federal employees' may pursue employment- and contractor-related claims." *Id.* (quoting *Am. Fed'n of Gov't Emps., AFLCIO v. Trump*, 929 F.3d 748, 755 (D.C. Cir. 2019)).

The plaintiffs in *Widakuswara* framed their claims as a challenge to what they characterized as a "dismantling" or "wholesale shuttering" of a government agency, *id.*, but the Court of Appeals held, unequivocally, that the APA does not allow such "'wholesale' challenges to an agency's 'entire program,'" *id.* at *3 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990)), reasoning: "[t]he 'dismantling' that plaintiffs allege is a collection of 'many individual actions' that cannot be packaged together and 'laid before the courts for wholesale correction under the APA.'" *Id.* (quoting *Lujan*, 497 U.S. at 893).

Yet that is the very theory underlying the May 1, 2025, Memorandum Order.

Specifically, the Court reasoned therein that "[t]he wholesale termination of grants and services and the mass layoffs appear to violate the clear statutory mandates outlined in the [Museum and Library Services Act]," concluding "Plaintiffs are . . . likely to succeed in showing that defendants' actions to unilaterally shutter IMLS violate, at minimum, the Administrative Procedure Act."  Mem. Order at 3, 4.  The D.C. Circuit's reasoning in *Widakuswara* demonstrates that such a "wholesale" challenge to an alleged agency closure cannot proceed under the APA; rather, the agency's employees and contractors must bring discreet challenges to the personnel actions as to which they have standing, via the appropriate administrative channels that Congress created for that purpose.  *See Widakuswara*, 2025 WL 1288817, at *3.

Likewise, *Widakuswara* demonstrates that this Court lacks jurisdiction over challenges to Defendants' grant terminations.  There, the D.C. Circuit held that the government was "likely to succeed on the merits because the district court likely lacked subject-matter jurisdiction . . . to compel the agency to restore" grants that it had cancelled.  *Id.* at *3.  In reaching that conclusion, the court applied *Department of Education v. California*, 145 S. Ct. 966 (2025) (per curiam).  *Id.*  The court reasoned that in the "grants at issue, USAGM . . . promised to pay the appropriated funds to the [grantees] in monthly installments.  In return, the [grantees] promised to use the funds to advance statutory objectives and to comply with all program requirements."  *Id.*  Such "exchanges of promises—reflecting offer, acceptance, consideration, mutuality of intent, and action by an official with authority to bind the government—constitute government contracts for Tucker Act purposes."  *Id.* (citing *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338-39 (Fed. Cir. 2021)).  As a result, "the injunction" at issue there "in substance orders specific performance of the grant agreements—a quintessentially contractual remedy."  *Id.*  And "the claims of government nonpayment necessarily challenge its performance under the grants.  Such

claims are squarely contract claims under the Tucker Act." *Id.* at *4.

Nor did it matter that "Congress appropriated specific sums for" the grantees. *Id.* at *4. Rather, those statutes "do not give the [grantees] an unqualified right to the appropriated funds," but instead "allocate funds for the [grantee]s, which may be disbursed only as grants." *Id.* "Once the agency entered those contracts," its compliance with the terms of those agreements was subject to the Court of Federal Claims. *Id.*

The court also rejected the *Widakuswara* plaintiffs' contention that their "non-APA claims regarding grant money" warranted departure from the conclusion that the district court lacked subject-matter jurisdiction in light of the Tucker Act: "[T]hese constitutional claims simply flow from allegations that the Executive Branch has failed to abide by governing congressional statutes, which does not suffice to trigger the distinctively strong presumptions favoring judicial review of constitutional claims." *Id.* at *5 (citing, *inter alia*, *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 79–80 (D.C. Cir. 1985), for notion that "Tucker Act governs challenge to contract termination, 'despite plaintiff's allegations of statutory and constitutional violations'").

The same reasoning controls in this case. While the May 1, 2025, Memorandum Order focuses on Congressional appropriation of funds to IMLS, *see* Mem. Order at 4, *Widakuswara*—and, indeed, the Supreme Court's reasoning in *California*—confirms that plaintiffs' claims regarding grant termination, even grants premised on appropriated funds, are properly viewed as contractual claims for purposes of the Tucker Act. Accordingly, as to this set of claims too, this Court lacks subject matter jurisdiction.

For all these reasons, reconsideration of the May 1, 2025, Memorandum Order is warranted. And, manifestly, "harm or injustice would result if reconsideration were to be

denied." *See supra*. As to personnel matters, the Court of Appeals recognized "[t]he Executive Branch has a significant interest in maintaining control over personnel matters," and an injunction interfering with that important responsibility constitutes a harm to the federal government. *See Widakuswara*, 2025 WL 1288817, at *5. As to grants, the Court of Appeals recognized—like the Supreme Court did last month—that the disbursement of funds to grantees, especially in a setting in which the district court declined to require bond, would mean the government could not recover those payments even if it later prevailed on appeal. *See id.* The same is true here of the grant agreements affected by the TRO. As long as the TRO prohibits Defendants from further pausing, canceling, or otherwise terminating IMLS grants or contracts, funds will flow out of the public fisc, with little hope for their recovery.

Especially in light of the irreparable harm that will result in the absence of relief—the Court should follow the guidance of the Court of Appeals in *Widakuswara* and the Supreme Court in *California*—and reconsider the May 1, 2025, Memorandum Order. For the same reason, the Court should deny Plaintiffs' pending motion for a preliminary injunction.

Dated: May 6, 2025                          Respectfully submitted,

                                            YAAKOV M. ROTH
                                            Acting Assistant Attorney General

                                            ERIC J. HAMILTON
                                            Deputy Assistant Attorney General
                                            Civil Division, Federal Programs Branch

                                            JOSEPH E. BORSON
                                            Assistant Branch Director
                                            Federal Programs Branch

                                            /s/ *Abigail Stout*
                                            ABIGAIL STOUT

(DC Bar No. 90009415)
*Counsel*
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 514-2000
Email: Abigail.Stout@usdoj.gov

*/s/ Julia A. Heiman*
JULIA A. HEIMAN (D.C. Bar No. 986228)
HEIDY L. GONZALEZ (FL Bar No. 1025003)
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, N.W.
Washington, DC  20005
Tel. (202) 616-8480 / Fax (202) 616-8470
julia.heiman@usdoj.gov

*Attorneys for Defendants*