UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN LIBRARY ASSOCIATION, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>KEITH SONDERLING, et al.,<br><br>*Defendants*. | Case No. 1:25-cv-01050 |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

Defendants ask this Court to reconsider its temporary restraining order based on the issuance of a stay in another case, even though that stay has itself since been administratively stayed. But there has been no change in controlling law, no new evidence that favors reconsideration, and no clear error by this Court. Defendants have not met their burden. Their motion should be denied, and nothing in Defendants' filing should impact the Court's assessment of the pending preliminary injunction motion.

### BACKGROUND

Defendants are on a campaign to rapidly dismantle the Institute of Museum and Library Services. *See* PI Br., ECF No. 13 at 5–8. On March 14, 2025, President Trump decided IMLS was "unnecessary" and ordered Defendants to "eliminate[]" it and "reduce the performance of [its] statutory functions and associated personnel to the minimum presence and function required by

1

law." *Id.* at 5 (citing "Continuing the Reduction of the Federal Bureaucracy," Exec. Order No. 14238, 90 Fed. Reg. 13043, § 1 (Mar. 14, 2025) ("Executive Order")). Defendants got to work: before the month was out, they appointed an Acting Director who lacks the statutory qualifications to serve, placed 75 out of fewer than 90 staff members on indefinite administrative leave with plans for a reduction in force, and subsequently terminated the vast majority of the agency's grants, including mandatory grants to state library systems, by April 8. *Id.* at 6–7.

Plaintiffs sued on April 7, Compl., ECF No. 1, and moved for preliminary relief on April 10, PI Mot., ECF No. 13. The parties briefed the issues in full, and this Court held a hearing on April 30. The Court issued a temporary restraining order (TRO) prohibiting Defendants from "plac[ing] additional IMLS staff on administrative leave," "terminat[ing] the employment of any IMLS staff," and taking steps to "pause, cancel, or otherwise terminate IMLS grants or contracts." Mem. Order, ECF No. 36 at 6. The Court concluded that Plaintiffs were likely to succeed on their claims that "wholesale termination of grants and services and the mass layoffs appear to violate the clear statutory mandates outlined in" IMLS's governing statutes, and that "Defendants' actions to unilaterally shutter the IMLS violate, at minimum, the Administrative Procedure Act." *Id.* at 3–4. It also determined that Plaintiffs had demonstrated irreparable injury. *Id.* at 4–5. The Court should deny Defendants' request for another bite at the apple during the time-limited period of the TRO.

I. **Defendants have not met their burden to warrant reconsideration.**

The Court issued a limited TRO, *see id.* at 5, and the standard for altering or amending that order is not met here. Courts will only grant such a motion "as justice requires"—that is, "where there was a patent misunderstanding of the parties, where a decision was made that exceeded the issues presented, where a court failed to consider controlling law, or where a significant change in the law occurred after the decision was rendered." *Peck v. SELEX Sys. Integration, Inc.*, 270 F. Supp. 3d 107, 116–17 (D.D.C. 2017), *aff'd*, 895 F.3d 813 (D.C. Cir. 2018) (citing *Capitol Sprinkler*

*Inspection, Inc. v. Guest Servs.*, Inc., 630 F.3d 217, 227 (D.C. Cir. 2011)). "The moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." *Id.* at 117 (citation omitted). "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. Geo. Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005).

Defendants have not identified a good reason to relitigate the preliminary relief ordered by this Court. Defendants do not claim that the Court has misunderstood any of the issues or facts, nor do they argue that the Court reached any improper conclusion. Indeed, Defendants cite no new factual developments at all, let alone any that would weigh in their favor.[1] On the contrary, the Court understands the parties perfectly; the decisions made in the TRO are confined to the adversarial issues presented by this case; and there has been no controlling or significant change in the law or the facts. This conclusion is reinforced by the procedural posture of the case—the TRO will end on May 29, during which period the Court is considering Plaintiffs' request for a preliminary injunction. It is profoundly inefficient to request that the Court revisit the TRO during this short window.

Defendants' sole basis for reconsideration is that an order issued by a divided special panel of the D.C. Circuit to stay preliminary injunctions entered by Judge Lamberth in four related cases involving the United States Agency for Global Media represents "guidance on the controlling law." Mot. for Recons., ECF No. 38 at 2. But this order does not warrant reconsideration of the Court's

---

[1] If anything, the facts that have continued to develop since this Court last had the benefit of briefing by the parties demonstrate that Defendants continue to dismantle IMLS as quickly as they can, with disregard for the statutory requirements set out by Congress. *See* Pls.' Suppl. Br., ECF No. 40. Plaintiffs' supplemental brief, submitted concurrently with this opposition, provides evidence that prior to the entry of the TRO Defendants have continued their dismantling campaign. *See id.*

order, nor does it lessen Plaintiffs' entitlement to a preliminary injunction.

First, that order has been stayed as the full court considers en banc review. *See Widakuswara v. Lake*, Nos. 25-5144, 25-5145, 25-5150, 25-5151, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ("*Widakuswara* Panel Decision"), *pet. for en banc rehearing pending, administratively stayed in relevant part sub nom. Middle East Broad. Networks v. United States*, Nos. 25-5150, 25-5151, 25-5158 (May 7, 2025) (en banc). The status of the *Widasuswara* panel stay decision is unsettled, at best, and, accordingly, should not disturb the Court's time-limited TRO or impact its assessment of the request for a preliminary injunction.

Second, Plaintiffs here are not bound by the threshold jurisdictional barriers discussed by the *Widakuswara* panel. The Plaintiffs do not represent IMLS employees subject to adverse employment actions, PI Br., ECF 13-1 at 2, making the statutes channeling certain employment disputes to administrative bodies irrelevant. *Cf. Widakuswara* Panel Decision at 2–3. Further, in addition to direct grant-recipients, Plaintiffs include the beneficiaries of IMLS grant programs (AFSCME's librarian members) and beneficiaries of IMLS survey data (AFSCME-affiliated unions). PI Br., ECF No. 13-1 at 34–36; Mem. Order, ECF 36 at 4–5. Even if the Court did not have jurisdiction over the claims of the direct grant-recipients (which it does), the beneficiaries of grant programs would have no recourse to the equitable relief they seek in the Court of Federal Claims, making jurisdiction in this Court appropriate. *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988). The *Widakuswara* panel's discussion of the Tucker Act did not address that statute's application to beneficiaries of grant programs; that discussion therefore has no bearing on beneficiaries' claims. *Cf. Widakuswara* Panel Decision at *3–5.

Third, the *Widakuswara* panel confirmed (as it must) the bedrock principle that agencies' statutory obligations are enforceable through the Administrative Procedure Act, regardless of the

existence of a contract. *Widakuswara* Panel Decision at *8 n.5 (citing *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982)). Plaintiffs have established, PI Br., ECF 13-1 at 16–27, and this Court based the TRO in part on, Defendants' violation of statutory obligations set forth in the Museum and Library Services Act separate and apart from its mass termination of grants. Mem Order, ECF 36 at 3–4. If anything, the *Widakuswara* panel decision confirms the ongoing correctness of this aspect of the Court's ruling.

Fourth, nothing in the *Widakuswara* panel decision disturbs the Court's conclusion that there has been final agency action here. The panel discussed what it perceived as the lack of cognizable final agency action in the context of employment decisions it determined should be channeled, again not relevant here. *Widakuswara* Panel Decision at *4. The panel did not (and could not) disturb the longstanding test for final agency action under *Bennett v. Spear*, 520 U.S. 154 (1997), which Plaintiffs have shown they meet. PI Br., ECF 31-1 at 16–18. The kind of non-discrete agency activities insulated from review are those where litigants seek "*wholesale improvement of [a] program by court decree*," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)), activity that is different in kind from the discrete actions identified by Plaintiffs here. Defendants simply overread the *Widakuswara* panel decision to suggest it casts doubt on the reviewability of challenges to agency dismantling beyond the facts of the cases at issue there. *Cf. Nat'l Treasury Emps. Union v. Vought*, No. CV 25-0381 (ABJ), 2025 WL 942772, at *13 (D.D.C. Mar. 28, 2025) (a decision to "shut down the agency entirely" is "a final, concrete decision" subject to judicial review under the APA). Consistent with its preliminary posture, the decision provides limited explanation and should not disturb the Court's application of the familiar, fact-specific, and pragmatic final agency action analysis. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016).

Finally, even if there were any reason to question whether there has been final agency action here, Plaintiffs would still be entitled to relief on their freestanding *ultra vires* and constitutional claims regarding IMLS's dismantling.

Fifth, while the *Widakuswara* panel concluded that the district court likely did not have "jurisdiction to restore" the grants at issue, its reasoning would not dispose of the Court's jurisdiction over the claims by the grant recipients in this case. *Widakuswara* Panel Decision at *3. *Widakuswara* did not and could not disturb the longstanding standard for assessing whether district courts have jurisdiction over certain claims by grantees, namely whether the claim "is at its essence a contract claim," such that it must be brought in the Court of Federal Claims, or not. *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (quoting *Megapulse*, 672 F.2d at 967). It is established that the mere fact that an order requiring the government to pay money does not render a claim contractual, *Bowen v. Massachusetts*, 487 U.S. 879, 900-01 (1988), nor does the fact that a case "requir[es] some reference to or incorporation of a contract." *Megapulse*, 672 F.2d at 968 ("This court retains the power to make rational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds."). Instead, before and after the *Widakuswara* panel decision, jurisdiction "depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Crowley*, 38 F.4th at 1106 (citation omitted).

Plaintiffs have already explained why both factors demonstrate that this Court has jurisdiction, ECF 34 at 7–9, and nothing in the *Widakuswara* panel decision compels a different application of those factors here. The *Widakuswara* panel's Tucker Act analysis focused on the claims of individual grant recipients (in that case Congress had identified individual appropriations to be awarded directly to those entities), which the panel likened to requests for specific

6

performance. *Widakuswara* Panel Decision at *6–9. Even if that conclusion were to survive the requested en banc review, it should not impact the Court's analysis in this matter. Plaintiffs here are challenging the elimination of IMLS grant programs en masse, PI Br., ECF 13-1 at 5–8; Mem. Order, ECF 36 at 4 (identifying grant programs required by statute), not any individual decision by IMLS as to a particular grantee. Instead, Plaintiffs' requested preliminary relief would restore the status quo, including with respect to grant recipients, to that preceding the unlawful shutdown decision. The requested relief would not disturb the agency's ongoing ability to manage its grant programs, consistent with its constitutional and statutory obligations, including, where permitted by the terms and conditions of individual grant agreements, termination. In that regard, the requested relief is nothing like a request for specific performance brought by an individual grant recipient. *Cf. Widakuswara* Panel Decision at *4 (citing *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 79–80 (D.C. Cir. 1985)).

Finally, the *Widakuswara* panel's irreparable harm analysis is inapposite here. The Panel found a stay appropriate on the basis of the government's interest in "maintaining control over personnel matters" and in avoiding the unrecoverable loss of funds if grants are disbursed that the government has lawful authority to withhold. *Id.* at *5. But whatever the nature of that interest here, it is outweighed by the irreparable harm Plaintiffs face in light of Defendants' evisceration of IMLS. The "nature of injunctive relief is to interfere with what the enjoined party would otherwise do," *id.* at *15 (Pillard, J., dissenting)—and here, it is the severity of Defendants' actions that determine the scope of the injunction and its attendant restrictions on Defendants' discretion. Whatever the effect of the injunction on the government, it is simply "proportionate to the dislocation the government chose to undertake," and Defendants "cannot 'be heard to complain about damage inflicted by [their] own hand.'" *Id.* (quoting *Pennsylvania v. New Jersey*, 426 U.S.

660, 664 (1976)). That self-inflicted harm must be balanced against the harms inflicted on Plaintiffs—and here, those harms are immediate and nigh existential. *See* Mem. Order, ECF 36 at 4 ("Plaintiffs have established that the grant terminations, loss of access to IMLS expertise and services, and loss of access to IMLS data have forced libraries to end programs midstream, fire employees, and, in some cases, completely shutter."). The harms here do not weigh in favor of reconsideration; they require a preliminary injunction to ensure the vitality of libraries across the country.

The more apt analogy is to *Rhode Island v. Trump*, where a collection of states has sued to challenge the dissolution of IMLS. No. 1:25-CV-00128-JJM-LDA, 2025 WL 1303868 (D.R.I. May 6, 2025). As a preliminary matter, the court found no jurisdictional bar: the states' claims were neither subject to the Tucker Act, because "the essence of their claims are not contractual" but instead "based on alleged statutory and constitutional violations" *id.* at 18; nor subject to the Civil Service Reform Act, *id.* 18–21, since "none of the plaintiffs are federal employees" and "a finding of CSRA preclusion would foreclose all meaningful judicial review," *id.* at 19. The court determined the states were likely to succeed on the merits of their claims. *Id.* at 22–40. The court found "unrefuted evidence" that IMLS had taken "agency action" and found it arbitrary and capricious, *id.* at 26–30, and contrary to law, *id.* at 31–40. The court found the states had alleged irreparable harm, including libraries issuing stop work orders, ending literacy programs, halting services, freezing hiring, losing needed centralized data collection, denying payments to contractors, initiating layoffs, and ending or diminishing programs for seniors, veterans, English learners, and the blind and visually impaired. *Id.* at 41–45. And the court determined such an injunction would be in the public interest, with all the illustrated harms painting the picture of the importance of the federal government following its own laws. *Id.* at 46–47.

So too in *American Federation of Government Employees v. Trump*. There, the court found that mass terminations across the federal government violated various statutory provisions and constitutional limits on power and issued a temporary restraining order to mitigate the harms alleged, including loss of government services and loss of employment. No. 25-CV-03698-SI, 2025 WL 1358477 (N.D. Cal. May 9, 2025). The court rejected the idea that the case should be channeled to an administrative tribunal: "[T]he claims at issue here are wholly collateral to the review authority of the Federal Labor Relations Authority and the Merit Systems Protection Board" because "this lawsuit involves questions of constitutional and statutory authority and the separation of powers." *Id.* at *14. And the court held that a memo directing other agencies to submit plans for a reduction in force constituted final agency action, even before such RIF plans had been approved. *Id.* at 21. It reasoned that when an agency "states a definitive position in formal notices, confirms that position orally, and then sends officers out into the field to execute on the directive," the agency "engages in 'final' action." *Id.* (cleaned up) (quoting *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 579 (9th Cir. 2019)). That is exactly what IMLS did when Defendants went to IMLS headquarters on March 31 to notify staff that they were being placed on indefinite administrative leave with plans for a RIF within 30 days.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Reconsideration.

Dated: May 13, 2025                                    Respectfully submitted,

/s/ *Orlando Economos*
Orlando Economos (DC Bar No. 90013791)
Rachel L. Fried (DC Bar No. 1029538)
Kayla M. Kaufman (DC Bar No. 90029091)
Robin F. Thurston (DC Bar No. 1531399)
Skye Perryman (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
oeconomos@democracyforward.org
rfried@democracyforward.org
kkaufman@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

/s/ *Chris Gair*
Chris Gair (Ill. Bar No. 6190781)*
Vilia Dedinas (Ill. Bar No. 6191614)*
John Gallo (Ill. Bar No. 6193988)*
Ingrid Yin (Ill. Bar No. 6339857)*
Gair Gallo Eberhard LLP
1 E. Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 600-4900
cgair@gairgallo.com
vdedinas@gairgallo.com
jgallo@gairgallo.com
iyin@gairgallo.com

*Counsel for Plaintiffs*

**Pro hac vice* application pending